UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA                                                              PLAINTIFF

VS.                                                      CIVIL ACTION NO. 3:08cv83-DPJ-JCS

FEDERATED RURAL ELECTRIC
INSURANCE EXCHANGE                                                           DEFENDANT


**ORDER**

This insurance dispute is before the Court on the following motions: Motion for Reconsideration [105] by Travelers Property Casualty Company of America ("Travelers"); Travelers' Motion for Certification of Rulings for Interlocutory Appeal [107]; Motion to Alter or Amend Judgement [108] by Federated Rural Electric Insurance Exchange ("Federated"); and Federated's Cross Motion to Alter or Amend Judgment [111]. The Court, having fully considered the parties' submissions and the applicable law, finds as follows:

**I.      Facts / Procedural History**

This coverage dispute arises from a work related death. In October 2003, Bobby Murray was working for Travelers' insured Frank Laird Construction, Inc. ("Laird"). Laird was performing under a Construction Contract with Federated's insured Magnolia Electric Power Association (MEPA), whereby Laird had agreed to construct a portion of a power line for MEPA in Amite County, Mississippi.

Murray's estate sued MEPA in August 2004. MEPA thereafter tendered the defense to Laird based on an indemnity agreement between the two. Laird tendered the case to its insurer, Travelers, which initially accepted the defense under reservation of rights, but denied any duty to

indemnify MEPA. Travelers persisted in the reservation and the denial of indemnity until the end of the underlying litigation. At some point prior to March 2007, Travelers learned that Federated insured MEPA, leading Travelers to tender the case to Federated. Federated declined the tender that same month. There is no dispute that Federated retained and paid independent counsel to represent MEPA and Travelers reimbursed Federated for the costs of that defense.

Ultimately, MEPA's independent counsel filed a motion for summary judgment in the Murray wrongful death case that was rejected by the state court in January 2008. Although Travelers had not participated directly in the defense of the Murray wrongful death case, it elected to settle on MEPA's behalf. In doing so, Travelers attempted to obtain Federated/MEPA's agreement that payment would not be deemed voluntary and that the insurers would reserve the right to later determine coverage. MEPA would not consent; Travelers settled under reservation.

Travelers thereafter filed this federal declaratory judgment action against Federated seeking reimbursement for the amounts it paid in defense and indemnity. Federated filed a third-party suit against Laird essentially arguing that if it is liable to Travelers, then Laird is liable to it. All parties moved for summary judgment in their favor.

Following oral argument, this Court orally announced its summary judgment rulings June 19, 2009. In very general terms, the Court held that Travelers could seek reimbursement of defense costs but not settlement payments and that Laird should be dismissed. The following week, the Mississippi Supreme Court decided *Guidant Mutual Insurance Co. v. Indemnity Insurance Co. of North America*, a case that now forces the Court to reevaluate its prior holdings.

2

— So. 3d —, Nos. 2007-CA-01593-SCT, 2006-CA-01472-SCT, 2009 WL 1798818, at *2 (Miss. Jun. 25, 2009).

**II.    Analysis**

   A.    <u>Collateral Issues</u>

The core questions in this case are whether Travelers is entitled to recoup its defense costs and whether it is entitled to reimbursement of settlement payments. Those damages must be viewed separately, and the Court's initial ruling required a long list of Erie guesses under Mississippi substantive law. Many of those rulings are reflected in either the motions to alter or amend or the motions to certify issues for interlocutory appeal. Other issues are not directly reflected in those motions but are necessary for a full understanding of those issues. To provide clarity, this order will summarize relevant holdings that were more fully addressed in the oral ruling.

   1.    *The Indemnity Exception*

To begin with, MEPA was an additional insured on the Travelers policy. According to the Blanket Additional Insured endorsement of that policy, Travelers' coverage was excess.[1] Despite Travelers' status as an excess carrier, it would still have a duty to indemnify MEPA if Mississippi were to recognize the so-called indemnity exception, which shifts the loss to the insurer of an indemnitor despite "other insurance" clauses. This Court found that Mississippi

---

[1]The endorsement states in paragraph 4:

> Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured . . . unless the contract or agreement specifically requires that this insurance apply on a primary or contributory basis.

would adopt this exception. *See American Indem. Lloyds v. Travelers Property & Cas. Ins. Co.*, 335 F.3d 429, 436 (5th Cir. 2003); *Chubb Ins. Co. of Canada v. Mid-Continent Cas. Co.*, 982 F. Supp. 435 (S.D. Miss. 1997).

2. *Indemnity Agreements*

The written agreements between Laird and MEPA contained two indemnity provisions found in a separate Hold Harmless Agreement and in the body of the Construction Contract. Having recognized the indemnity exception, the Court then determined whether either of these contractual provisions created a valid right of indemnity in MEPA's favor. This required a number of sub-rulings, many of which were issues of first impression.

First, the Court concluded that the Hold Harmless Agreement was void because it would force Laird to indemnify MEPA for its own negligence in violation of Mississippi Code Annotated Section 31-5-41 (1990).[2] *See Crosby v. Gen. Tire & Rubber Co.*, 543 F. 2d 1128 (5th Cir. 1976) (holding that a similarly worded provision was void).

Second, the Construction Contract survives section 31-5-41 due to a savings provision found in Section 1, paragraph f(I), which states that the parties agree Laird will indemnify "[t]o the maximum extent permitted by law."[3] This Court found that Mississippi would follow other

---

[2]Mississippi Code Annotated Section 31-5-41 reads in relevant part with respect to construction contracts that:

> every covenant, promise, and/or agreement contained therein to indemnify or hold harmless another person from the person's own negligence is void as against public policy and wholly unenforceable.

[3]That Construction Contract states in relevant part as follows:

i) To the maximum extent permitted by law, Contractor shall defend, indemnify, and hold harmless Owner . . . from all claims, causes of action, losses,

4

jurisdictions and enforce such a savings provision. *See, e.g., Giangarra v. Pav-Lak Contracting, Inc.*, 866 N.Y.S.2d 332, 333-34 (N.Y. App. Div. 2008) (finding that similar language reformed otherwise invalid indemnity provision); *Vecellio & Grogan, Inc. v. Piedmont Drilling & Blasting, Inc.*, 644 S.E.2d 16, 21 (N.C. Ct. App. 2007) (same)*; Hagerman Const. Corp. v. Long Elec. Co.*, 741 N.E.2d 390, 393 (Ind. Ct. App. 2000); *Callahan v. A.J. Welch Equip. Corp.*, 634 N.E.2d 134, 137 (Mass. Ct. App. 1994) (finding indemnity provision in a construction contract that offended statute not entirely void because of the phrase "to the fullest extent permitted by law"); *Bennett v. Bank of Montreal*, 554 N.Y.S.2d 869, 871-72 (N.Y. App. Div. 1990); *Brown v. Two Exch. Plaza Partners*, 539 N.Y.S.2d 889, 894 (N.Y. App. Div. 1989); *Cox v. Lumbermens Mut. Cas. Co.*, 439 N.E.2d 126, 130 (Ill. App. Ct. 1982); *see also Ramsey v. Georgia-Pacific Corp.*, 597 F.2d 890, 894 (5th Cir. 1979).

Third, although the Hold Harmless Agreement was a special provision and the Construction Contract was general, the former did not supercede the latter. As a matter of general construction, special provisions supercede generic. *See Ronald Adams Contractors v. Miss. Transp. Comm'n*, 777 So. 2d 649, 656-67 (Miss. 2000). Furthermore, Mississippi law is clear that "special provisions inserted in a contract govern over boilerplate provisions." *Id.* However, these rules of construction apply only when there is ambiguity in the contract. *Yazoo Prop. v. Katz & Besthoff*, 644 So. 2d 429, 432 (Miss. 1994). Under section 31-5-41, the Hold Harmless Agreement was "void" and "wholly unenforceable." "Void" means "[o]f no legal

---

liabilities, and expenses (including reasonable attorney's fees) for personal loss, injury, or death to persons (including but not limited to Contractor's employees) and loss, . . . in any manner arising out of or connected with the Contract. . . . But nothing herein shall be construed as making Contractor liable for any injury, death, loss, damage, or destruction caused by the sole negligence of Owner.

effect" or "null." BLACK'S LAW DICTIONARY 1568 (1999). A "void contract" is "a contract that does not exist at law; a contract having no legal force or binding effect." *Id*. Because the Hold Harmless Agreement is of no effect, the Court found that it could not create an ambiguity.

Moreover, the four corners of the Construction Contract, and even the effort to adopt the void Hold Harmless Agreement, clearly demonstrate the parties' intent for Laird to indemnify MEPA to the full extent allowed by law. *See Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003) (explaining duty to discern parties' intent). The Court therefore made the Erie guess that Mississippi would enforce the language of the Construction Contract.[4]

Finally, the Court examined the maximum extent to which Laird could have indemnified MEPA under Mississippi law. This analysis required two additional findings. First, this Court concluded that Mississippi would allow a joint tortfeasor to recover indemnity under a construction contract, but not for its own negligence. *See Ramsey,* 597 F.2d at 893; *Crosby*, 543 F. 2d 1128. Furthermore, the Court found that Mississippi would allow full indemnity, including attorneys fees, if it is found that the injury was not proximately caused by the indemnitee's negligence. *See Am. Home Assurance Co. v. Chevron, USA, Inc.*, 400 F.3d 265, 268 (5th Cir. 2005) (applying Louisiana law); *Roy Anderson Corp. v. Transcon. Ins. Co.*, 358 F. Supp. 2d 553 (S.D. Miss. 2005); *American Cyanamid Co. v. Campbell Constr. Co.*, 864 F. Supp 580 (S.D. Miss. 1994); *Perry v. Chevron USA, Inc.*, CIV. A. No. 87-2905, 1988 WL 125438, at *4 (E.D. La. Nov. 22, 1988); *Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 (La. 1987).

---

[4]Travelers seeks interlocutory appeal on this issue.

3. *Determining Negligence*

Federated argued that its fault, if any, could not be determined post-settlement and therefore section 31-5-41 did not apply. This issue was answered under Louisiana law in *American Home Assurance Co. v. Chevron, USA, Inc.*, 400 F.3d 265, 268 (5th Cir. 2005). There, the Fifth Circuit reversed a summary judgment order finding that the question of the indemnitee's fault was a question of fact that could be decided post-settlement. *Id.* at 272. This Court concluded that Mississippi would follow suit.

In sum, this Court previously held that Travelers, by virtue of its insured's duty to indemnify, was required to indemnify MEPA to the extent MEPA was not negligent. Furthermore, if the finder of fact concludes that the accident was not proximately caused by MEPA's fault, then Traveler's claims for reimbursement of defense costs must fail. Finally, these inquiries must be made by the trier of fact.

B. Motions to Reconsider

"Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). "[S]uch a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Instead, "a motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003) (citations and quotations omitted).

7

However, "because the denial of a motion for summary judgment is an interlocutory order, the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 185 (5th Cir. 1990); *accord In re Elevating Boats LLC*, 286 F. App'x 118, 122 *3 (5th Cir. 2008) (affirming that a district court could revise a summary judgment order "prior to the entry of final judgment"). In this case, *Guidant* clarified the law, making this an appropriate case for reconsideration.

1. *Travelers' Motion to Reconsider*

As stated, Travelers seeks reimbursement of defense costs and the amount it paid to settle the Murray wrongful death case. The two are not treated the same under the policy. Section IV ("General Liability Conditions"), paragraph 4, states as follows:

> When this insurance is excess, we will have no duty under Coverage A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

This clause created the duty to defend following Federated's declination, but it says nothing of the duty to indemnify, and the two obligations are distinct duties under Mississippi law. This led the Court to conclude that Travelers' right to seek defense costs was contractual and the right to seek contribution for the settlement payment was a matter of common law.

In Mississippi, the common law origins of indemnity trace to *Bush v. City of Laurel*, 215 So. 2d 256, 259 (Miss. 1968), which held that

> [a]n obligation to indemnify may arise from a contractual relation, from an implied contractual relation, or out of liability imposed by law. When one person is required to pay money which another person in all fairness should pay, then the former may recover indemnity from the latter in the amount which he paid, provided the person making the payment has not conducted himself in a wrongful manner so as to bar his recovery.

In *Genesis Insurance Co. v. Wausau Insurance Co.*, the Fifth Circuit held that the rule establishes that

> [a] voluntary payment can not be recovered back, and a voluntary payment within the meaning of this rule is a payment made without compulsion, fraud, mistake of fact, or agreement to repay a demand which the payor does not owe, and which is not enforceable against him, instead of invoking the remedy or defense which the law affords against such demand.

343 F.3d 733, 736 (5th Cir. 2003).

However, the Mississippi Supreme Court announced a different standard in *State Farm v. Allstate* where two co-primary carriers disputed which should cover the claim. 255 So. 2d 667 (Miss. 1971). State Farm defended, settled, and then sought reimbursement from Allstate. The Mississippi Supreme Court first defined "volunteer" as "a stranger or intermeddler who has no interest to protect and is under no legal or moral obligation to pay." *Id.* at 669. It then held as follows:

> Surely, Allstate should not be allowed to take advantage of its own wrong. Surely it should not be rewarded for breaching its contract with its insured by refusing to defend him in any manner. 8 APPLEMAN, INSURANCE LAW AND PRACTICE, § 4913, page 398,[5] in our opinion states the more equitable view: "The majority of cases now recognize the undesirability of rewarding the insurer which refuses to honor its contractual obligations, and hold that payment by an insurer which properly undertakes a burden of settlement or defense does not render it a volunteer, not entitled to recover."

255 So. 2d at 669.

---

[5]Now 8A APPLEMAN, INSURANCE LAW AND PRACTICE, § 4921, at 538.

In its original holding, this Court found that Travelers was a volunteer for purposes of the settlement funds based on the Fifth Circuit's holding in *Genesis* that the mere "payment under 'protest' or accompanied by a unilateral reservation of rights will not escape the application of the volunteer doctrine." 343 F.3d at 736. In addition, the Court applied *Liberty Mutual Fire Insurance Co. v. Fireman's Fund Insurance Co.,* which made the Erie guess that Mississippi would not apply *State Farm v. Allstate* to an excess carrier. 235 F. App'x 213, 217 (5th Cir. 2007).

Travelers now bases its motion for reconsideration on *Guidant Mutual Insurance Co. v. Indemnity Insurance Co. of North America*, which was handed down three days after this Court entered the order in the instant case. In *Guidant*, an employee faced civil suit following a vehicular accident. Guidant Mutual Insurance Company ("Guidant Mutual") issued the employee's primary auto policy and an umbrella policy. In addition, the driver's employer was insured by Indemnity Insurance Company of North America ("INA"). According to the Mississippi Supreme Court, Guidant Mutual's auto policy was primary, INA's policy was excess above Guidant Mutual, and Guidant Mutual's umbrella policy provided excess coverage above the INA limits. Guidant Mutual unilaterally settled the underlying suit and then sought contribution from INA for an amount above its auto limits but below the umbrella.[6]

---

[6]Travelers argues that Guidant Mutual settled in its capacity as an excess carrier because the amount sought in contribution exceeded the primary layer and was paid from the excess policy. Therefore, the argument continues, *Guidant* extends *State Farm* to excess carriers. Federated responds that Guidant Mutual settled in its capacity as the primary carrier due to its obligations under *Hartford Accident & Indemnity Co. v. Foster*, 528 So. 2d 255 (Miss. 1988). The problem is that *Guidant* is susceptible to both interpretations because the distinction was not addressed and Guidant Mutual was both primary and excess. Although Federated's interpretation is more likely, it is not dispositive.

Significantly for the present case, INA urged the court to affirm the trial court's finding that Guidant Mutual paid as a volunteer under the considerations outlined in the Fifth Circuit's *Gensis* holding. The Mississippi Supreme Court rejected the argument without citing *Genesis* and reversed the trial court. In doing so, the court acknowledged a number of *Genesis* type factors for finding voluntariness, including, but not limited to, the following: "(1) [the carrier] was legally liable to an injured third party, (2) that it paid under compulsion, and that (3) the amount it paid was reasonable." *Guidant Mut. Ins. Co.*, 2009 WL 1798818, at *7. The court refused, however, to apply those factors, stating merely that "this case concerns issues of contribution, not indemnity." *Id.* The court then analyzed the case under *State Farm* and held that Guidant Mutual could seek contribution from INA "if Guidant can prove it was *legally liable to settle*, and the amount it paid the injured party or parties was reasonable." *Id*. at *8 (emphasis added).

*Guidant* does not explain the contribution versus indemnity distinction, but a party seeking contribution would by definition have owed some duty for its share of the debt. [7]

---

[7]A leading commentator has distinguished contribution and indemnity in the insurance context as follows:

> The term "contribution" means the act of any one or several insurers, co-sureties, or co-debtors in reimbursing one of their number who has paid the whole debt or loss, or who has paid greater than its share of the debt or loss. . . . Unlike contribution, . . . indemnity can relieve an insurer or surety of the entire burden of the loss.

COUCH ON INSURANCE § 217:5

11

*Guidant* seems to suggest that if the party seeking contribution establishes its duty to pay, it may then seek contribution for the portions of the settlement it paid on the other carrier's behalf.[8]

Turning to Travelers, the Construction Contract and application of the indemnity exception distinguish *Liberty Mutual* and bring the case in line with *Guidant*. Travelers was not merely an excess carrier. Its duties were coterminous with Laird's duties under the Construction Contract (i.e., defend, indemnify, and hold MEPA harmless to the extent the injuries were not proximately caused by MEPA's negligence). Thus, Travelers had a duty to pay some portion of the settlement. It was not "a stranger or intermeddler" with "no interest to protect and . . . no legal or moral obligation to pay." *State Farm*, 255 So. 2d at 669. Moreover, Travelers' only potential claim is one for contribution rather than full indemnity. *Guidant Mut. Ins. Co.*, 2009 WL 1798818, at *7.

It is important to note that this is a dispute among two carriers rather than a dispute between Travelers and MEPA or Travelers and the Murrays. Travelers and Federated both provided coverage for this same risk. *See generally* 8A APPLEMAN, INSURANCE LAW AND PRACTICE, § 4921. In fact, Federated, though it refused Travelers tender, will be liable to the extent the injuries are attributable to MEPA's negligence. As explained in the authority relied upon in *State Farm*,

---

[8]In its instructions on remand, *Guidant* states that the plaintiff carrier may seek contribution if it was "legally liable to settle." 2009 WL 1798818, at *8. The Mississippi Supreme Court has never before used this phrase, and it is not entirely clear whether it means liable for settlement amounts, under legal duty to settle, or something else. Although the distinction was not an issue in *Guidant*, it is an issue in the present case. Nevertheless, the actual holding in *Guidant* adopts the *State Farm* definition of "volunteer." It appears that the phrase "legally liable to settle" found in the instructions is intended to refer to *Guidant's* express adoption of the "legal or moral obligation to pay" standard from *State Farm*. 255 So. 2d at 669. As explained below, Travelers had such an obligation.

> [A] separate suit for indemnification is the preferable method of handling a dispute between insurers presenting the question as to which insurer was the primary carrier in connection with an accident; by such a procedure, an injured person recovers for his injuries without delay while the insurers thereafter iron out their respective liabilities.

8A APPLEMAN, INSURANCE LAW AND PRACTICE, § 4922, at 542. This same policy would support a contribution claim.

In sum, Travelers was no stranger to this action, owing MEPA the duty to defend, indemnify, and hold it harmless. Federated also owed a duty to the extent MEPA's negligence caused Murray's death, and yet it refused Travelers' tender. These facts bring the case in line with the policy exception to the volunteer rule announced in *State Farm* and affirmed in *Guidant*, a policy that reduces gamesmanship among carriers at the expense of injured parties and insureds. *Guidant Mut. Ins. Co.*, 2009 WL 1798818, at *8 (citing *State Farm*, 255 So. 2d at 669; 8 APPLEMAN ON INSURANCE § 4913 at 398); *see also* COUCH ON INSURANCE § 218:27 ("The rule that a compromising insurer is entitled to seek contribution is especially applicable where the second insurer denied liability, but the claim was later judicially determined to be within coverage of the second policy."). Travelers may seek reimbursement of reasonable amounts paid to settle that portion of the claim associated with MEPA's negligence, if any.[9]

### 2. *Federated's Motion to Alter or Amend*

Federated first claims the Court erred in failing to grant summary judgment in its favor for lack of proof that it was negligent. If Federated intended to move for summary judgment on this ground, it is not apparent from its motion for summary judgment or accompanying

---

[9]The Court acknowledges that these are difficult issues not fully answered by existing precedent. Federated's position is not without merit, and if the authority existed, the Court would be tempted to certify this and other issues to the Mississippi Supreme Court.

13

memorandum. [Docket Nos. 68, 69]. Rather, Federated argued that, absent a pre-settlement adjudication of fault, section 31-5-41 of the Mississippi Code does not apply. Memorandum in Support of Summary Judgment [69] at 25-29. The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The issue was not squarely presented. Moreover, an issue not previously raised may not be argued on a motion to alter or amend. *Templet*, 367 F.3d at 479. Finally, Federated misplaces reliance on this Court's oral ruling that "there was no way to determine, based on the current record, the extent to which MEPA was negligent, if any." The statement merely reflects that a question of fact exists as to MEPA's fault vel non.

Federated next argues that the right to defense costs should be limited to the amounts incurred after Federated declined the tender. Federated could be correct. *See Guidant Mut. Ins. Co.*, 2009 WL 1798818, at *9. However, the issue was not raised and can be addressed post-trial when the Court issues its findings of fact and conclusions of law.

    C.    <u>Motions to Certify Interlocutory Appeal</u>

Travelers sought certification of two issues for appeal: (1) whether the Hold Harmless Agreement was controlling; and (2) if the Hold Harmless Agreement is not controlling as to Laird's indemnity obligations, whether the indemnity provision in the Construction Contract is void pursuant to section 31-5-41. Federated does not oppose certification, but contends that all issues should be reviewed because they are interrelated, and changing the ruling on Travelers' issues for appeal would necessarily affect other rulings.

14

To certify an interlocutory appeal, this Court must state that it is of the opinion that its orders (1) involve controlling questions of law, (2) as to which there is substantial ground for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). "The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order." *Vrazel v. Miss. State Port at Gulfport*, No. 106CV-657LG-RHW, 2006 WL 3457175, at *1 (S.D. Miss. Nov. 27, 2006) (citing § 1292(b)).

In the present case, the issues Travelers seeks to certify, and the issues ruled upon in this order, all satisfy the requirements of § 1292(b). In addition, Federated is correct that the issues not directly mentioned in the pending motions are interrelated such that changing one ruling will affect others. Substantial ground for disagreement exists as most of the questions are issues of first impression under Mississippi law. In fact, when faced with a similar dispute under Louisiana law, the Fifth Circuit certified the question to the Louisiana Supreme Court. *Meloy*, 504 So. 2d at 839. Finally, the Fifth Circuit's consideration of the issues may either eliminate the need for a trial or dramatically affect the nature of the trial. Reversal after trial would in all likelihood require retrial.

Accordingly, the Court finds that the rulings addressed in this order and the prior oral ruling satisfy § 1292(b), including the following:

1. Under Travelers' policy, it was an excess carrier as to settlement payments but had a contractual duty under "Section IV, Paragraph 4" of the policy to defend when Federated declined the tender.

15

2. Mississippi would not apply the volunteer doctrine to the settlement and would instead allow Travelers to seek contribution to the extent MEPA's negligence caused Murray's injury.

3. As to defense costs, Travelers was contractually obligated under its policy to defend MEPA and is/was entitled to subrogation. As such, the defense costs fall outside the common law volunteer doctrine.

4. That given the opportunity, Mississippi would adopt the indemnity exception.

5. That the Hold Harmless Agreement is void *ab initio* under Mississippi's anti-indemnity statute, Mississippi Code Annotated Section 31-5-41.

6. That the void Hold Harmless Agreement would not supercede an otherwise valid but more general indemnity provision in the Construction Contract.

7. That the indemnity provision of the Construction Contract is in some respects void but that Mississippi would reform the provision due to its savings clause and allow indemnity to the maximum extent allowed by law.

8. That Mississippi would allow a joint tortfeasor to seek indemnity under Mississippi Code Annotated Section 31-5-41 to the extent its negligence did not cause injury.

9. That Mississippi would require full indemnity (including defense costs) when the injury was not caused by the indemnitee's negligence.

10. Whether MEPA's negligence proximately caused Murray's injury and the extent to which its fees related to its own negligence are fact questions that can be decided post-settlement by the trier of fact.[10]

Finally, for the reasons stated, the Court finds that this matter should be stayed until the Fifth Circuit Court of Appeals rejects or decides the appeal.

---

[10]This list is meant to be inclusive and is provided for the convenience of the appellate court. In addition, the issues related to Laird were the subject of a Rule 54(b) order, and it should be noted that the results as to Laird could be affected if this Court incorrectly decided other issues certified for appeal.

**III.    Conclusion**

For the foregoing reasons, the Court finds that the Motion for Reconsideration of Travelers Property Casualty Company of America [105] is granted; Travelers' Motion for Certification of Rulings for Interlocutory Appeal [107] is granted in part; Federated Rule Electric Insurance Exchange's cross motion regarding interlocutory appeal [111] is granted; and Federated's motion to alter amend [108] is denied.

**SO ORDERED AND ADJUDGED** this the 3th day of September, 2009.

                                          s/ *Daniel P. Jordan III*
                                          UNITED STATES DISTRICT JUDGE